Filed 11/7/24  T.C. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| T.C., | |
| Petitioner, | E084296 |
| v. | (Super.Ct.Nos. J298748 & J298749) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Cara D. Hutson, Judge.  Petition granted.

Friedland & Associates, and Kathy L. Garcia for Petitioner.

No appearance for Respondent.

Tom Bunton, County Counsel, and David Guardado, Deputy County Counsel, for Real Party in Interest.

1

T.C. (mother) petitions for extraordinary relief pursuant to rule 8.452 of the California Rules of Court seeking to set aside the orders of the San Bernardino juvenile court made at a Welfare and Institutions Code section 366.21, subdivision (e) six-month review hearing.[1]  Those orders terminated family reunification services as to mother's two children, and set a section 366.26 permanent plan selection hearing as to them.

## BACKGROUND

Mother and S.S. (father) are the parents of P.S. and D.S.  The family came to the attention of real party in interest, San Bernardino County Department of Children and Family Services (the Department) in October 2023, when P.S. was born with a positive toxicology for amphetamines and opiates, and suffered withdrawal symptoms.  Mother also tested positive for those substances as well as for Fentanyl.

Mother claimed she tested positive for amphetamines and opiates because she was taking Tramadol and Adderall prescribed for her, and did not know why she tested positive for Fentanyl.  She admitted abusing substances (heroin) over 20 years ago and "went to rehab" when she was 19 years old.  The maternal aunt reported mother had battled with opiate use since she was young and expressed concern that mother was actively using "substances."

The Department took P.S. and two-year-old D.S. into protective custody and filed section 300 juvenile dependency petitions on their behalf.

---

[1]     All statutory references herein are to the Welfare and Institutions Code unless otherwise noted.  All references to rules are to California's Rules of Court.

2

I. *The Detention Hearing*

At the October 19, 2023, detention hearing the juvenile court ordered the children detained and placed with maternal relatives. It ordered predispositional services to be provided to the parents. The court also ordered both parents to drug test that day and thereafter to test at the Department's direction, and cautioned them that failure to comply would be deemed a positive test.

Neither parent tested on the day of the detention hearing, claiming they were not on the list when they arrived at the testing site.

II. *The Hearings on Jurisdiction and Disposition*

When interviewed by the Department's social worker in anticipation of the hearings on jurisdiction and disposition, mother continued to assert she tested positive for amphetamines and opiates because she was using Tramadol and Adderall prescribed for her use, and she believed the positive result for Fentanyl was an error because P.S. did not test positive for that drug.

At the November 9, 2023, hearing on jurisdiction and disposition, the matter was set for a January 17, 2024, contested hearing on jurisdiction and disposition. Mother's counsel reported her client's objection to the Department's statement in its report that it made reasonable efforts to maintain the children at home and also reported her client's intention to retain private counsel. A substitution of counsel for mother was filed on December 1, 2023.

In the course of the November 9, 2023 proceedings, the court ordered the parents to drug test that day. There is no record that mother complied with the order; father's test was positive for amphetamines, acetylmorphine, and opiates.

While the contested hearing was pending, the Department's drug and alcohol counselor made seven efforts to contact mother (on December 5, 11, 15, 18, and 19, 2023, and on January 4 and 8, 2024). She failed to respond. Meanwhile, she tested positive for amphetamine, methamphetamine, acetylmorphine, and a mix of opiates (codeine, hydromorphine, and morphine) on December 4, 7, and 19, 2023, and again on January 10, 2024. On November 21, 2023, she submitted a diluted sample positive for amphetamines and opiates.

Father also failed to respond to the counselor's several efforts to reach him (five attempts in December 2023, and two in January 2024). Father tested negative twice (once in December 2023 and again in January 2024), but tested positive for amphetamines, acetylmorphine, and opiates on November 9 and December 4, 2023, and positive for those substances and marijuana on December 11, 2023; he tested positive for amphetamines and opiates on November 13 and 29, 2023.

On January 17, 2024, the date set for the contested hearing on jurisdiction and disposition, father's counsel made a special appearance for mother's counsel. Apparently, her counsel had been present earlier in the day, and submitted an executed waiver of rights form on mother's behalf. At the hearing and in response to the court's inquiries, mother confirmed her intention to plead no contest to the petitions' allegation

4

that she has a substance abuse problem, which impairs her ability to adequately and appropriately parent her children, placing them at risk of abuse or neglect.

The court sustained the petitions' allegations as to the parents' substance abuse problems and the additional allegation that father knew of mother's substance abuse issue and failed to protect P.S. It adjudged the children dependents of the court, removed them from their parents, and ordered family reunification services, with twice-weekly, two-hour supervised visits between the parents and children.

The family reunification plan for mother consisted of five components: (i) general counseling; (ii) an age appropriate parenting class; (iii) successful completion of a drug treatment program approved by the Department, with regular attendance and active participation in all sessions, and compliance with any recommendations and referrals; (iv) random, observed drug testing conducted by the Department or a substance abuse program approved by the Department (with all drug tests results to be negative for drugs and alcohol, and missed tests considered a positive result); (v) attendance and participation in an NA/AA program a minimum of once a week, with documentation of dates and signatures evidencing attending to be provided to the Department's social worker assigned to mother.

III. *Family Reunification Efforts*

In June 2024, the Department prepared a report prepared in anticipation of the July 17 six-month status review hearing, which provided an update of efforts to reunify the family in the period following the hearing on jurisdiction and disposition.

In keeping with family reunification plan, the Department had referred mother to counseling in December 2023. The goals set forth in the referral included addressing several subjects: the Department's involvement with the family, the children's removal, child endangerment, failure to protect, focus on insight and self-awareness into drug use, and take accountability for placing the children at risk. The counselor reported that mother's attendance was sporadic, which mother attributed to her need to make efforts "to complete required detox program." By April 9, 2024, mother had completed the eight sessions authorized by the referral. The therapist recommended six additional sessions to increase the chances of mother accomplishing the therapeutic objectives.

Although mother admitted to the therapist that she had a history of drug abuse, the mother had not been honest with the therapist about the reasons for the children's removal. According to the therapist, mother had attributed her current situation to her doctor's advice to continue taking Adderall while pregnant and, after the baby's birth, the Department "showed up that [she] tested positive for fentanyl."

The Department reported that it had reminded mother of the allegations found true by the court, and had explained to her "many times" that the confirmation tests established that nonprescription drugs were in her system. It gave mother an additional referral for further therapy and advised her she would need to be honest about the reasons for the children's removal and her drug use in order to benefit from therapeutic services.

The Department also reported mother's progress with the reunification requirements designed to address mother's substance abuse problem. After the

6

Department's drug counselor's initial efforts to reach mother were unsuccessful, an arrangement was made for her to enter a program on January 31, 2024. She did not attend the intake appointment because she felt like she should attend a detox program first, and said she would enter Cedar House for that purpose on February 23, but by March 1, she had left that program, stating she felt like she needed a higher level of care with medical staff on site. Mother did not provide any documentation to evidence her self-admission into the program or her attendance there.

The counselor told the social worker that mother had been advised many times that she needed to be in an inpatient program because she was continuing to test positive for opioids, methamphetamine and acetylmorphine, and the confirmation tests verified she was in fact taking drugs. The counselor informed mother that referrals to just a detox program are not available; that they are only offered as a component of a program. She assured mother that the inpatient program now being recommended would send her to detox first before beginning the program.

On April 23, 2024, mother again failed to enter an inpatient facility as scheduled, saying she was sick. A week later, she returned to Cedar House, completed nine days of detox, and was moved to Maple House on May 8. While there, mother began insisting she should be released from the program in 30 days, rather than stay for at least 60 days as recommended by her case manager.

In a grievance form dated May 30, 2024, mother complained that her case manager was not being receptive and was not assisting her in her efforts to leave the

inpatient program in 30 days. She said she needed an early release to permit her time to complete an outpatient program "per [her] case plan" before her July court date (that is, by the six-month review hearing) so she would not lose her children.

Mother specifically stated that she wanted the recipient of her grievance to be aware that, "[her] baby did <u>not</u> test positive for anything," [emphasis in original] and declared she had the meconium results to establish that fact, and "[t]hey" said she tested positive for Fentanyl, which was "impossible" because she was taking only prescription medications. Mother went on to say her social worker is "corrupt," that the worker is not there to help her but is instead "just trying to sell [mother's] kids." She suggested the person reading her complaint should, "Please Google San Bernardino CFS lawsuit if you don't believe me."

On June 27, 2024, after completing 51 days of the inpatient program, mother was discharged. The plan was for her to begin an outpatient program on July 11, 2024 but, by July 16, the social worker had not been able to confirm whether mother had shown up for the intake appointment. According to a note from inpatient case manager, the five drug tests given mother during her stay were negative. The social worker also asked the parents to test the day after mother left the inpatient program because the Department's office reported the parents had been going back and forth to their car multiple times during the visit and appeared jittery. The tests were negative.

Mother was present at the July 17, 2024, six-month review hearing and was represented by counsel appearing for her attorney. Counsel opposed termination of

8

mother's family reunification services. He noted mother had continuously attended treatment facilities for 60 days, spending nine days at Cedar House and 51 days at Maple house, and that she had completed a parenting program and a perinatal residential program while attending the Maple House. Counsel added that, "We understand the position and I've tried to explain to my client the position that she is in. She can only ask me to ask the Court to please keep the window open for family reunification."

Minors' counsel argued the children are very young (ages "zero and two"), they had been in out-of-home care for nine months, and the parents' confirmation drug tests show they are using "extensive" drugs, and there is not enough time for them to get the treatment necessary for them to reunify. Counsel asserted the parents had not benefitted from services enough to find a substantial likelihood of return of the children to their care even if the court was to afford them additional services.

Counsel for the Department joined in the argument of minors' counsel, and added the parents had remained in denial. Mother did not participate in treatment for the first six-and-a-half months of the case, and father did not start his efforts until the eighth month. Counsel acknowledged the parents' completion of some services but said they have not benefitted from them. Counsel remarked that the parents appeared to treat the case plan as a checklist, that they do not grasp the need to benefit from services, and noted in particular mother's failure to be open and honest with service providers.

The juvenile court found the children were under the age of three at the time of their initial removal. It found by clear and convincing evidence that the Department had

9

provided reasonable services to mother and father, that the parents had failed to participate regularly and make substantive progress with the court-ordered case plan, and that they had failed to complete their plan. It further found the Department had complied with the case plan and that the parents had made minimal progress toward alleviating or mitigating the causes necessitating the children's placement out of home, and there was not a substantial probability that they could be returned home within the statutory time frames. It ordered termination of family reunification services and set the matter for a section 366.26 permanent plan selection hearing.

Each of the parents timely filed a notice of intent to file a writ petition, but only mother filed one.

## DISCUSSION

In her petition, mother argues she should be granted a contested status review hearing because the juvenile court orders were the result of ineffective assistance of her retained counsel. We requested supplemental briefing from the parties addressing the issue whether there is sufficient evidence to support the juvenile court's finding that mother failed to participate regularly and make substantive progress in her court-ordered treatment plan.

In a case like the present one in which the children are under the age of three at the time of initial removal from parent and family reunification services are offered and provided to the parent, the juvenile court is authorized by section 366.21, subdivision (e)(3) to terminate those services at the six-month review hearing if it finds by clear and

10

convincing evidence that the parent had not regularly participated and made substantive progress in a court-ordered treatment plan.  We review the court's ruling for substantial evidence, accounting for the heightened degree of certainty required by the clear and convincing evidence.  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011 (*O.B.*); *In re V.L.* (2020)  54 Cal.App.5th 147, 155 [*O.B.*, *supra*, is controlling in dependency cases.]

Here, the record demonstrates mother has had an ongoing struggle with substance abuse, and that she delayed engaging in the services offered by the Department to address the problem, continued to test positive for various substances, and denied the child was born with a positive toxicology.  But, between the end of April 2024 and the six-month review hearing on July 17, 2024, she began to engage in drug rehabilitation services.  By the time of the hearing, she completed a 51-day inpatient program, had been consistently testing negative during the program, tested negative the day after leaving the program, and was scheduled to start an outpatient program.  In addition, she had completed a parenting program and a perinatal residential program while attending the inpatient program.

In view of mother's concerted and devoted efforts, albeit coming late in the reunification period, we do not find sufficient evidence to support the juvenile court's conclusion that she had not made substantial progress in her court ordered treatment program.

Because we will grant mother's petition for lack of substantial evidence to support the order terminating family reunification services, there is no call for us to address her argument that her former counsel provided ineffective assistance.

**DISPOSITION**

The petition for extraordinary writ is granted. The request for a stay is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

MENETREZ
J.